CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 17 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ABDUL-HAMZA WALI MUHAMMAD, | CASE NO. 7:14CV00529 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| COMMONWEALTH OF VIRGINIA, ET AL., | By: Glen E. Conrad<br>Chief United States District Judge |
| Defendant(s). | |

This prisoner civil rights action seeking monetary damages and injunctive relief under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") is presently before the court on the report and recommendation ("the report") of United States Magistrate Judge Joel C. Hoppe. The report recommends granting in part and denying in part defendants' motion for summary judgment and denying several motions by plaintiff. The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

Plaintiff has submitted several pleadings that the court liberally construes as objections to the report.[1] In light of plaintiff's objections, the court has reviewed, de novo in accordance with § 636(b)(1), the portions of the 40-page report to which they refer, and pertinent portions of the

---

[1] In referring to Muhammad's objections to the report, the court is liberally construing the multiple, rambling documents he has submitted since the report issued (see, e.g., ECF Nos. 158-160, 165, and 166). One of Muhammad's submissions (ECF No. 160) is entitled, in part: "NOTICE OF APPEAL . . . IN RE: [ECF NO. 157] REPORT AND RECOMMENDATION [and] ECF NO. 101 MOTION TO DISMISS." Pursuant to court procedure, the clerk's office processed this submission as a notice of interlocutory appeal of these two documents, which are neither appealable nor orders; the United States Court of Appeals for the Fourth Circuit has docketed an appeal in the case. Based on the allegations in the "notice," the court has also construed and considered the submission as additional objections to the magistrate judge's report.

record. The court concludes that while one of plaintiff's objections must be sustained, the majority of his objections must be overruled. Therefore, the court will adopt the report in part and reject it in part.

## Discussion

The pro se plaintiff, Abdul-Hamza Wali Muhammad, is an inmate at Red Onion State Prison ("ROSP"), operated by the Virginia Department of Corrections ("VDOC"). Muhammad's complaint, as amended (ECF Nos. 1 and 13) and liberally construed, alleges six separate claims: (1) Muhammad was misclassified on May 21, 2014, and thereby improperly kept in segregation; (2) the Common Fare diet Muhammad receives at ROSP is incompatible with his Nation of Islam ("NOI") religious beliefs; (3) defendants failed to provide Muhammad with proper food on the proper date for two NOI feasts in 2014; (4) he was unfairly convicted of two disciplinary infractions after Inmate Bratcher attacked and injured him on January 5, 2013; (5) corrections officers failed to intervene to protect him during Bratcher's attack; and (6) he was unfairly convicted of a disciplinary charge for urinating in a classroom. The defendant prison officials are sued in both their individual and official capacities.[2]

On Claim 1, the report recommends granting summary judgment as to all defendants and legal contentions, with the exception of the procedural due process claim against Defendants Day, Kegley, and Mathena, related to Muhammad's Institutional Classification Authority

---

[2] Using the correct spelling of names as provided by defendants' pleadings, Muhammad sues the Commonwealth of Virginia and numerous Virginia Department of Corrections ("VDOC") officials: Harold W. Clarke, A. David Robinson, Brian Keith Dawkins, Helen Scott Richeson, Gerald K. Washington, Adina L. Pogue, Mark E. Engelke, P. Scarberry, Randall Charles Mathena, John F. Walrath, Sherri Shortridge, Jeffrey C. Artrip, Geraldine G. Baker, A. J. Gallihar, Dewayne A. Turner, Stacy L. Day, Reanne Kegley, CMC Jackson, S. Fletcher, Lieutenant C. Stanley, Sergeant Eric Anthony Miller, Sergeant Clinton Deel, Sergeant John Messer, J. W. Coyle, C. Bishop, A. J. Vaughan, Lieutenant Steven B. Franklin, Lieutenant James Lyall, Lieutenant Justin Kiser, George Hinkle, Larry W. Jarvis, John McQueen, Sergeant C. Dixon, Unit Manager Tori M. Raiford, Missy L. Counts, Captain D. Still, A. Murphy, B. Akers, D. Williams, Larry I. Mullins, N. H. Cookie Scott, Debra D. Gardner, Paul Moceri, Rena Mullins, and the members of the "dual treatment team" (who are also named as individual defendants).

2

("ICA") hearing on May 21, 2014. With respect to this remaining portion of Claim 1, the report recommends denying defendants' motion under Rule 12(b)(6) and inviting Day, Kegley, and Mathena to file a supplemental motion for summary judgment, in light of Incumaa v. Stirling, 791 F.3d 517 (4th Cir. 2015), a case decided after defendants filed their present motion.

Muhammad objects to the report's conclusion that Defendants Artrip and Richeson are entitled to summary judgment on this claim. The court agrees with the report, however, that Muhammad's amended complaint focuses on a specific classification decision that Day and Kegley made and that Mathena upheld. Accordingly, the court will overrule Muhammad's objection, adopt the report as to Claim 1, and invite a supplemental motion for summary judgment on this claim.

As to Claim 2, alleging that Common Fare menu items are incompatible with Muhammad's NOI beliefs, the report recommends granting summary judgment for defendants. The report finds that Muhammad fails to demonstrate defendants' personal involvement or to state facts on which a fact finder could determine that the current Common Fare menu places a substantial burden on his NOI religious practices. The report also concludes that even if Muhammad could show a substantial burden, the defendants' evidence establishes that accommodation of offenders' religious dietary preferences on an individual basis at each VDOC institution would present prohibitive administrative and financial hurdles when compared to the

centralized Common Fare program.³ Finding no genuine issue of material fact in dispute, the court will overrule Muhammad's objections and adopt the report as to Claim 2.

As to Claim 3, alleging violation of Muhammad's rights related to two religious feast days in July and October 2014, the report recommends granting summary judgment for defendants on the merits. It is undisputed that Muhammad elected to receive his Common Fare diet during Ramadan 2014, that prison officials scheduled the post-Ramadan feast day in consultation with religious experts, and that Muhammad received a Common Fare meal on that day. Moreover, Muhammad admits that he received a special feast meal on the October 2014 feast day of which he complained in this action. The report concludes that Muhammad has failed to demonstrate that defendants, by providing him with Common Fare meal instead of a special feast meal on one occasion, placed a substantial burden on his religious practice in violation of his rights under the First Amendment or RLUIPA.⁴ Finding no merit to Muhammad's objections, the court will overrule them and adopt the report as to Claim 3.⁵

---

³ As the report indicates, this court has upheld the Common Fare program against RLUIPA challenges in the past. See, e.g., Brown v. Mathena, No. 7:14CV00020, 2014 WL 4656378, at *5 n.6 (W.D. Va. Sept. 16, 2014) (concluding "that the Common Fare program as currently operated furthers compelling state interests by the least restrictive means"; noting VDOC's "substantial effort to design and implement a single, centralized program that is certified by experts in religion and nutrition" and finding "it self-evident that the centralized menu and procedures further legitimate and neutral VDOC interests as a cost-efficient, uniform manner by which to accommodate inmates' various religious dietary beliefs at numerous VDOC facilities"); Coleman v. Jabe, No. 7:11CV00518, 2013 WL 4084762, at *2, 5 (W.D. Va. Aug. 13, 2013) (concluding that individual inmate's demands for change of Common Fare program cannot be accommodated).

⁴ In his objections regarding Claim 3, Muhammad raises a procedural due process claim. The complaint as amended does not assert any due process claim, however. Thus, the court concludes that this due process issue is not properly before the court in this lawsuit.

⁵ In addition to adopting the report's findings that Muhammad's religious dietary claims fail on the merits, the court also concludes that defendants are entitled to qualified immunity as to constitutional claims for monetary relief here. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (holding that officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). Moreover, Muhammad has no claim for monetary relief under RLUIPA. Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009) (finding that RLUIPA does not authorize claims for money damages against officials sued in official and individual capacity).

4

On Claim 4, alleging deficiencies in disciplinary proceedings related to Bratcher's attack, the report recommends summary judgment for defendants. Specifically, the report concludes that defendants involved in the disciplinary actions are entitled to absolute immunity as to Muhammad's claims for monetary damages. See Ward v. Johnson, 690 F.2d 1098, 1105 (4th Cir. 1982) (en banc) (citing Butz v. Economou, 432 U.S. 478, 508-17 (1978)). The report also finds that Muhammad has failed to establish deprivation of a liberty interest without sufficient due process protections.

A brief review of Muhammad's allegations in the complaint and in his objections reflects that the report's findings and recommendations are consistent with the record and applicable law. Hearing Officer Counts relied on the hearing officer's report in finding Muhammad guilty of disobeying a direct order, and did not consider the surveillance video relevant, because it did not include audio; Counts penalized Muhammad with temporary loss of telephone privileges. In finding Muhammad guilty of fighting, Counts relied on Muhammad's hearing testimony about grabbing Bratcher's leg rather than removing himself from the incident;[6] in light of this evidence, Counts did not review the video; she penalized Muhammad with a $12.00 fine. Because Counts had some evidence in the record to support her disciplinary findings, Muhammad has no viable due process claim of evidentiary insufficiency. See Superintendent Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 454 (1985). Finding no merit to Muhammad's objections, the court will overrule them and adopt the report as to Claim 4.

On Claim 5, the report recommends granting summary judgment for all defendants except Officer Coyle, who allegedly did not intervene to stop Inmate Bratcher's assault on

---

[6] Muhammad contends that his efforts to hold off Bratcher's attack should exonerate him from disciplinary charges for fighting with the inmate. As the report finds, this argument has no merit. See Rowe v. DeBruyn, 17 F.3d 1047, 1053 (7th Cir. 1994) (finding that prisoners have no fundamental right to argue self-defense to avoid disciplinary charge for fighting).

5

Muhammad.[7] The report recommends summary judgment for Bishop, because Coyle allegedly stopped him from intervening, and for Defendant Vaughn, the control booth officer, who reasonably fired a warning shot rather than directing the shot toward Bratcher. Muhammad objects to this recommended disposition.

The amended complaint alleges that Bratcher attacked Muhammad without warning, punching him three times—in the forehead, chin, and chest, after which Muhammad "caught [Bratcher's] leg mid air and was about to drive him to the ground" when K-9 officers arrived, ordered both inmates to the ground, and they complied. (Amend. Compl., ECF 13-4, at 1.) According to Muhammad's allegations and submissions, Vaughn was watching another area of the prison until Bishop notified him of Bratcher's attack; once notified, Vaughn gave a verbal order for the inmates to stop fighting, and fired his warning shot.[8] The K-9 officers arrived within 33 seconds of the first announcement of the attack. (See Pl. Resp. Ex., ECF No. 159-1, at 2.)

In his objections, Muhammad argues that a more attentive Vaughn could have fired his warning shot sooner and that Bishop could have intervened with pepper spray even after Coyle initially stopped him from moving toward the altercation. The allegations about the delay of Vaughn's shot supports, at most, a claim of negligence, rather than the deliberate indifference necessary to support a § 1983 claim for failure to intervene. See Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (finding that deliberate indifference entails "'more than mere

---

[7] As the report notes, Muhammad does not allege that any defendant knew in advance of Bratcher's intention to attack Muhammad or to prevent the attack from starting.

[8] In response to the report, Muhammad presents copies of internal incident reports about the January 2013 incident, indicating that "[w]hile in the process of firing the blank round from the 12 gauge shot gun, [Vaughn] accidentally discharged the "Blank" round onto the control room floor and actually fired a "23-HV Stinger round" toward the ceiling of the pod as an audible warning." (Pl. Resp. Ex., ECF No. 159-1, at 5.) Although defendants identify this round as being "less lethal" (Bishop Affid. ¶ 4, ECF No. 102-4), the court agrees with the report's finding that it was reasonable for Vaughn not to fire such a round directly at Bratcher, with the risk of hitting other inmates in the area.

6

negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result'") (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). Therefore, the court will overrule the objection regarding Vaughn.

The court concludes, however, that as to Muhammad's objection that Bishop could have intervened despite Coyle's interference, genuine, although close, issues of material fact remain. Taking the facts in the light most favorable to Muhammad, disputes remain as to whether both of these officers had a reasonable opportunity to stop the altercation more quickly, based on their physical location, training, and equipment. These factual disputes preclude summary judgment on the merits of the claim or on the ground of qualified immunity. Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995). Therefore, the court will sustain Muhammad's objection to granting summary judgment for Bishop, reject the report as to this recommendation, and deny summary judgment for Coyle and Bishop. As to all other aspects of Claim 5, however, the court will adopt the report and grant summary judgment for all other defendants.

As to Claim 6, alleging an improper disciplinary action, the report recommends granting summary judgment for defendants. Muhammad's objections to this disposition merely repeat the allegations and arguments already addressed and resolved in the report in a manner consistent with the record and applicable law. Accordingly, the court will overrule the objections, adopt the report as to Claim 6, and grant summary judgment for defendants on this claim.

As to other matters, the report recommends denial of Muhammad's motions seeking summary judgment and discovery sanctions (ECF Nos. 146 and 147).[9] Muhammad objects to this recommendation. He mistakenly contends that the magistrate judge has granted summary judgment in his favor on Claim 1 and Claim 5 and/or that his repetitive allegations and stacks of

---

[9] The report also recommends denying without prejudice Muhammad's pending motion for preliminary injunction and filing the document as a separate civil action—a disposition to which Muhammad raises no objection.

7

unexplained documentation and affidavits entitle him to judgment in his favor on all claims. After review of the record, the court will adopt the report's recommended disposition of Muhammad's prior motions (ECF Nos. 146, 147, and 152) and will deny as without merit the similar motions he has filed since the report issued (ECF 159 and 166).[10]

Finally, Muhammad has preserved for trial his contention of spoliation of evidence in this case (see ECFR No. 131); namely, he alleges that prison officials destroyed surveillance video footage of his January 2013 encounter with Inmate Bratcher, despite Muhammad's February 2013 requests for preservation of that footage. Resolution of this matter will likely require expansion of the record and/or a hearing regarding the destruction of this footage, to determine whether or not spoliation occurred and if so, the appropriate adverse inference or other sanction to which Muhammad may be entitled at a future trial of Claim 5 against Defendants Coyle and Bishop. See Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 155 (4th Cir. 1995); Fed. R. Civ. P. 37(e). Accordingly, the court finds it appropriate to refer this matter back to the magistrate judge for further proceedings under 28 U.S.C. § 636(b)(1)(B).

## Conclusion

For the stated reasons, the court will sustain Muhammad's objection regarding the report's recommended disposition of Claim 5 as to Defendant Bishop, reject this portion of the report, and deny summary judgment as to this claim against Defendants Coyle and Bishop. The court will overrule Muhammad's objection to the report's recommended disposition of Claim 5 as to all other defendants and grant summary judgment for them. The court will also overrule Muhammad's remaining objections and adopt the remainder of the magistrate judge's report. Based on the report's findings of fact and conclusions of law, the court will deny defendants'

---

[10] The court notes that although ECF No. 166 is styled as a "motion for settlement," the court construes and denies it as a motion for judgment in Muhammad's favor. In any event, settlement is not properly pursued by a motion to the court. Muhammad may pursue settlement negotiations directly with defendants' counsel.

8

motion as to Claim 1 against defendants Day, Kegley, and Mathena, and invite a supplemental motion for summary judgment on this claim; grant summary judgment as to all other aspects of Claim 1, and as to Claims 2, 3, 4, and 6; and deny all plaintiff's pending motions. Furthermore, the court will refer the matter to the magistrate judge for further proceedings under 28 U.S.C. § 636(b)(1)(B). An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants.

ENTER: This 17th day of March, 2016.

/s/ Glen Conrad
Chief United States District Judge