CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 27 2017

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ABDUL-HAMZA WALI MUHAMMAD, | CASE NO. 7:14CV00529 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| | (Adopting Report and Recommendation) |
| RANDALL CHARLES MATHENA, ET AL., | |
| | By: Glen E. Conrad |
| | Chief United States District Judge |
| Defendant(s). | |

This prisoner civil rights action under 42 U.S.C. § 1983 was referred to United States Magistrate Judge Joel C. Hoppe under 28 U.S.C. § 636(b)(1) on two issues. Judge Hoppe has now issued one report and recommendation (ECF No. 208) finding that the defendants are entitled to summary judgment on Claim 1 ("Report I") and a second report (ECF No. 207) finding that spoliation of evidence related to Claim 5 occurred and recommending an appropriate sanction at trial ("Report II"). The defendants have filed no objections. The pro se plaintiff, Abdul-Hamza Wali Muhammad, has filed objections to Report I (ECF Nos. 209 and 212) and Report II (ECF No. 210).[1] He has also filed motions seeking judgment in his favor on Claim 5 and seeking to pursue an independent spoliation claim (ECF No. 210 and 213). After conducting a de novo review of the reports, Muhammad's objections thereto and his other motions, and pertinent portions of the record in accordance with § 636(b)(1), the court will overrule the objections, adopt the reports, and deny Muhammad's pending motions.

The magistrate judge's report under § 636(b)(1)(B) makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). Fed. R. Civ. P. 72. The court is

---

[1] Although Muhammad does not title this submission as an objection to the magistrate judge's report on spoliation, the court construes it as such; in essence, Muhammad contends that he is entitled to a harsher sanction for spoliation than the sanctions recommended in the report.

charged with making a de novo determination of any portions of the magistrate judge's recommendation to which a specific objection is made. 28 U.S.C. § 636(b)(1)(C).

## Report I: Summary Judgment on Claim 1

Muhammad is an inmate at Red Onion State Prison ("Red Onion"). Muhammad's complaint, as amended (ECF Nos. 1 and 13), alleged in Claim 1 that Defendants Day, Kegley, and Mathena violated his procedural due process rights related to an Institutional Classification Authority ("ICA") hearing on May 21, 2014. Previously, the court denied dismissal of this part of Claim 1, but granted the defendants a second opportunity to seek summary judgment. (See ECF No. 168-69.)

Report I recommends finding that the defendants' classification decisions on May 21, 2014, and during a subsequent appeal, did not deprive Muhammad of a protected liberty interest without due process. Once an inmate is classified to Level S (long-term, administrative segregation), to obtain a reduction in that classification under the prison's voluntary, segregation reduction step-down program, he must meet certain requirements, including completion of the Challenge Series workbooks. Muhammad completed this series and was briefly reclassified to Level 6, the first step in transitioning from segregated confinement to a general population setting. In June 2013, Muhammad incurred several disciplinary charges and was reclassified to Level S. By May 2014, charge-free for eight months, Muhammad demanded reduction to Level 6 again. The ICA determination was to deny this reduction, based on Muhammad's failure to redo the Challenge Series after his reclassification to Level S. Muhammad claimed that the step-down policy did not require a second completion of the Challenge Series and that his failure to meet this requirement of the voluntary step-down policy could not be a valid reason to refuse the reduction from Level S.

2

The parties agree that the Virginia Department of Corrections ("VDOC") policy requiring ICA review of inmates' segregation status every ninety days creates a potential liberty interest in avoiding transfer to, or retention in, Level S and its "more adverse conditions of confinement." (Report I, at 6) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). The report recommends findings of fact and conclusions of law that Muhammad did not have a constitutionally protected liberty interest in being released to the general population because he did not show that the conditions he experienced in Level S presented atypical and significant hardship compared to the expected conditions of his prison sentence.[2] See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). In the alternative, the report also finds that the procedural protections Muhammad received met constitutional requirements.

In his objections, Muhammad largely reiterates arguments he has previously raised. The court has reviewed, de novo, the arguments and the record, and finds no factual or legal basis here for rejecting or amending the findings and conclusions of the report.[3] Accordingly, the court will overrule the objections, adopt Report 1, and grant the defendants' summary judgment motion as to Claim 1.

---

[2] The report also notes that these findings and conclusions are consistent with recent decisions by the Hon. James P. Jones, United States District Judge in this district. (Report I, at 8-9) (citing, e.g., DePaola v. Virginia Dep't of Corr., No. 7:14CV00692, 2016 WL 5415903 (W.D. Va. Sept. 28, 2016)).

[3] In his objection brief, Muhammad alleges for the first time that he suffers "atypical hardship" in Level S because he cannot participate in group religious services, in violation of his right to free exercise of his religious beliefs. Muhammad has not moved to amend his procedural due process claim with these unsworn allegations, and the court finds no justification for such an amendment at this late stage of the litigation. Moreover, Muhammad fails to show that the inability to practice group worship while in Level S is any different than restrictions on group worship that apply during a general population inmate's temporary assignment to segregated confinement for administrative reasons. Thus, he fails to show any ground here on which to find that Level S conditions meet the atypical hardship standard under Sandin so as to give rise to a constitutionally protected liberty interest. 515 U.S. at 483-84.

3

## Report II: Spoliation of Claim 5 Video

In Claim 5, Muhammad alleged that on January 5, 2013, Defendants C. Bishop and J.W. Coyle failed to intervene when Inmate Derrick Bratcher physically attacked him after they had been released for recreation. Muhammad claimed that Bishop attempted to intervene, but Coyle grabbed Bishop by the wrist and told him to let the beating continue. Bishop has denied any interference from Coyle. He has contended that Bratcher and Muhammad were fighting and that the officers, according to their training, waited to intervene until additional officers arrived to help. Based on the material disputes between these accounts, the court denied summary judgment.

Muhammad initially claimed that three officials (McQueen, Hall, and Mathena) intentionally destroyed surveillance camera footage of the January 2013 incident to hinder his litigation efforts. He sought to recover monetary damages from these individuals and to impose spoliation-based sanctions on the Claim 5 defendants. The court referred these spoliation issues to Judge Hoppe, who ordered briefing from the parties and conducted an evidentiary hearing.

Report II reflects the following factual findings related to spoliation. As a result of the altercation with Bratcher, officials charged and convicted Muhammad on an institutional charge of fighting. As early as January and February 2013, Muhammad asked officials to review and preserve surveillance camera footage of the altercation with Bratcher. During his appeal of the fighting charge, the warden's designee reviewed such footage, but found it inconclusive as to Muhammad's actions and denied the appeal. It is undisputed that after the grievance appeal, under a routine practice to record over past footage about every ninety days regardless of inmate requests for preservation, the January 5, 2013, footage was recorded over and lost. At the

4

evidentiary hearing in this case, Muhammad requested that the court instruct the jury at trial that it could infer that the contents of the missing video were adverse to the Claim 5 defendants.

The report concludes from the evidence that the missing video footage was relevant to Muhammad's Claim 5, and that officials negligently breached a duty to preserve it. The report further concludes, however, that Muhammad has no separate cause of action under federal or state law for monetary damages against McQueen, Mathena, and Hall related to spoliation of the footage. The report also finds that although the defendants to Claim 5 (Bishop and Coyle) personally committed no misconduct related to the failure to retain the desired footage, imputation to these defendants of other officials' negligent spoliation is necessary to avoid unfair prejudice to Muhammad.

Under Rule 37(e)(2) of the Federal Rules of Civil Procedure, the court may impose certain types of sanctions "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation . . . ." These special sanctions for intentional spoliation include imposition of "[a presumption] that the lost information was unfavorable" to the defendants, or dismissal or default judgment. Id. On the contrary, "upon finding prejudice to another party from [unintentional] loss of the information, [the court] may order measures no greater than necessary to cure the prejudice." Rule 37(e)(1).

The report notes that Muhammad has not been irreparably prejudiced by the loss of the video footage. Evidence in the record indicates that the footage did not include audio and creates uncertainty that the footage even showed the defendants' conduct during Muhammad's altercation with Bratcher. Although the footage more likely showed Muhammad's own conduct to some extent, he can present testimony, including his own, on this issue without the footage.

5

Ultimately, the report recommends that, as appropriately measured sanctions for the negligent spoliation of the footage,

> the Court should forbid the Defendants from putting on evidence relating to the fact of Muhammad's disciplinary charges and conviction (to the extent such evidence would otherwise be admissible) or to the actual contents of the video itself, including the written decision rejecting Muhammad's disciplinary appeal. In addition, the Court should instruct the jury that a recording of the January 5 altercation was made, Muhammad requested that it be preserved, but it was subsequently lost through no fault of Muhammad's, and the jurors should not assume that the lack of corroborating objective evidence undermines Muhammad's version of events surrounding the fight.

(Report 19.)

The defendants do not object to these proposed sanctions. Muhammad also has made no particularized objection to the correctness of the factual findings and legal conclusions, as reflected in the report. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation marks omitted). Based on those findings and conclusions, and finding no clear error, the court will adopt these portions of the report.

As stated, the court construes Muhammad's separate motion regarding spoliation as an objection to the report, seeking a harsher spoliation sanction, based on newly raised allegations about John Walrath, former assistant warden at Red Onion. (ECF No. 213.) This submission, titled "motion for reconsideration to reinstate" a separate spoliation claim, states that the spoliation was intentional. According to Muhammad's unsworn motion, after Walrath became warden at River North Correctional Center ("River North"), he was allegedly terminated for ordering destruction of video footage related to a use of force against an inmate. Muhammad

asserts that this "evidence" warrants imposition of a harsher spoliation sanction than the report recommends. However, Muhammad offers no other, admissible evidence in support of his conclusory assertion that the spoliation at Red Onion was intentional. Moreover, the court, in <u>de novo</u> review of the report and the record, does not find any factual or legal basis for this contention. Accordingly, the court will overrule Muhammad's objection, adopt the report, and impose the recommended spoliation sanctions at the trial on Claim 5.

Muhammad also seeks to pursue a separate claim for damages against Mathena, McQueen, and Walrath, based on the allegation that these defendants intentionally destroyed video footage at Red Onion in 2013. The report finds no legal basis under federal or state law for a separate spoliation claim against officials who failed to preserve evidence. <u>See, e.g., Silvestri v. Gen. Motors Corp.</u>, 271 F.3d 583, 590 (4th Cir. 2001) ("[W]hile the spoliation of evidence may give rise to court imposed sanctions . . . the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses."); <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 28 F. App'x 201, 206 (4th Cir. 2002) ("Virginia does not recognize a tort based on spoliation of evidence.") (citation omitted). Accordingly, the court must deny Muhammad's motion (ECF No. 213) as futile.

Finally, Muhammad has moved for judgment as a matter of law on Claim 5 (ECF No. 210). Because material factual disputes remain at issue for trial on this claim, however, the court must deny this motion.

7

Case 7:14-cv-00529-PMS   Document 216   Filed 01/27/17   Page 7 of 8   Pageid#: 3040

## Conclusion

For the stated reasons, the court will overrule Muhammad's objections, adopt the magistrate judge's reports, grant summary judgment for the defendants on Claim 1, and at the trial of Claim 5, will impose the recommended sanctions for spoliation of evidence. An appropriate order will issue this day.

ENTER: This 27th day of January, 2017.

*/s/ Conrad*
Chief United States District Judge